UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM MCCOY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 05-03-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JO ANNE BARNHART, Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff William McCoy and Defendant Jo Anne Barnhart, Commissioner of Social Security (Commissioner). [Record Nos. 9, 10] McCoy seeks to reverse the decision of an administrative law judge (ALJ) concluding that claimant was not entitled to Supplemental Security Income payments. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by McCoy.

## I.      LEGAL STANDARD

In reviewing the Commissioner's decision to cease a claimant's Child Disability Benefits and Supplemental Security Income payments, an ALJ employs a seven-step analysis. First, if the claimant can show that he has an impairment which meets or equals the severity of a listed impairment, he will be considered disabled. 20 C.F.R. § 404.1594(f)(1);

20 C.F.R. § 416.994(b)(5)(i). Second, the Commissioner seeks to determine if the claimant's medical condition has improved. 20 C.F.R. § 404.1594(f)(3); 20 C.F.R. § 416.994(b)(5)(ii). Third, the Commissioner considers whether any medical improvement is related to the claimant's ability to do work. 20 C.F.R. § 404.1594(f)(4); 20 C.F.R. § 416.994(b)(5)(iii). Fourth, if the answers to step two and three were "no," the Commissioner determines whether an exception to the medical improvement standard exists. 20 C.F.R. § 404.1594(f)(5); 20 C.F.R. § 416.994(b)(5)(iv). Fifth, if the answer to three or four was "yes," the Commissioner determines whether claimant has a severe impairment. 20 C.F.R. § 404.1594(f)(6); 20 C.F.R. § 416.994(b)(5)(v). Sixth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC")[1] and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1594(f)(7); 20 C.F.R. § 416.994(b)(5)(vi). Finally, if the claimant cannot return to his past work, the Commissioner determines whether the claimant can perform any other work. 20 C.F.R. § 404.1594(f)(8); 20 C.F.R. § 416.994(b)(5)(vii).

To meet the burden of showing the claimant could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard*, 276 F.3d

---

[1]      The RFC is an assessment of the claimant's remaining capacity for work once his limitations are taken into account. 20 C.F.R. § 416.945. It is meant to describe the claimant's residual abilities or what the claimant can and cannot do, not what maladies a claimant suffers from. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).

at 238 (quoting *Varley v. Sec'y of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)). If he cannot perform other work, the Commissioner will find the claimant disabled.

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of*

*Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).  Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.  Credibility determinations are particularly within the province of the ALJ.  *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

## II.    PROCEEDINGS BEFORE THE ALJ

McCoy previously was awarded Childhood Disability Benefits and Supplemental Security Income payments.  However, those payments were terminated on October 1, 2001, because the Commissioner determined that his condition had improved and that he would be capable of performing some type of work activity.  McCoy appeals this decision.

On November 13, 2003, an administrative hearing was held before ALJ Charlie Paul Andrus in Prestonsburg, Kentucky.  During this hearing, the ALJ heard testimony from McCoy and Donald Joe Woolwine, a vocational expert (VE).  Thereafter, the ALJ issued a decision denying benefits to McCoy.  [Transcript at pp. 17-24; (Tr., p. ___)] The ALJ concluded that McCoy retained the residual functional capacity to perform a significant range of light work.

-4-

[Tr., p. 24]  Based on testimony from the VE, the ALJ further concluded that McCoy was capable of performing a significant number of jobs in the national economy.  [Tr., p. 24]

## III.     DISCUSSION

McCoy appears to raise three arguments in this action: (1) that the ALJ should have found that he met Listings 12.04, 12.05, and 12.06; (2) that the ALJ did not give proper weight to his treating physicians; and (3) that the ALJ did not give proper weight to his testimony.  The three claims are related.

As noted above, the Claimant insists that he is suffering from a mental condition defined in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P., App. 1, Sections 12.04, 12.05, and 12.06.  Sections 12.04 and 12.06 describe affective and anxiety disorders, while Section 12.05 deals with mental retardation.  In order for a claimant to show that he meets or equals a listed impairment,

> the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency.

*Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). This  decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques.  20 C.F.R. § 404.1526 and § 416.926.

Here, the Claimant has failed to point to any evidence establishing that he suffers from a condition that meets Sections 12.04, 12.05, or 12.06.  Having reviewed the medical evidence of record, the Court finds that the ALJ's decision that McCoy did not suffer from any of these

listings, or an impairment with functional limitations equivalent to any of these listings, is supported by substantial evidence.

McCoy has also alleged that the ALJ failed to give proper weight to the "treating physicians." However, in his brief, McCoy has not indicated the "treating physicians" to which the ALJ failed to accord proper weight. Instead, McCoy claims that the ALJ placed too much weight on the opinion of psychologist Phil Pack. After reviewing ALJ Andrus' decision, it is clear that the ALJ reviewed and discussed all relevant evidence presented, including Pack's report.

Initially, McCoy was found to be disabled based on medical and vocational considerations related to his depression and mental retardation. In July 1997, Dr. Thomas Shurling performed a psychological examination on the Claimant and found that he had a verbal IQ of 60, performance IQ of 57 and a full scale IQ of 57. However, at that time, Dr. Shurling opined that his scores would likely improve in the future. Specifically, he noted that "[i]t is expected that this score would be higher on future testings due to current emotional factors which may have prevented optimal performance." [Tr., p. 168] On July 26, 2001, Pack administered a second psychological exam. On that test, McCoy performed significantly better than he did on the July 1997 test. He had a full scale IQ score of 80 (verbal IQ of 88 and performance IQ of 76). Pack concluded that those test scores placed McCoy in the average range of functioning. He noted that McCoy had graduated from high school and had taken regular (as opposed to special education) classes.

Subsequently, on November 10, 2003, the Claimant underwent another psychological evaluation.  This exam was performed by Dr. Eric Johnson.  Notably, McCoy's IQ scores were in the below average range.  Specifically, he had a full scale IQ score of 65 (verbal IQ of 68 and performance IQ of 68).  Dr. Johnson noted that McCoy had a 5th grade equivalent education.  However, he opined that McCoy was over reporting his symptoms.

After evaluating this evidence, the ALJ determined that McCoy did not possess below average intellectual functioning.  The ALJ rejected the IQ scores received from Drs. Shurling and Johnson, noting that these scores were out of line with the scores obtained by Pack.  His reasons for accepting Pack's findings (and, therefore, rejecting those of Drs. Shurling and Johnson) were based largely upon the fact that McCoy had a high school education with vocational training.  In addition, ALJ Andrus indicated that the treatment notes from Mountain Comprehensive Care reflected that McCoy had average intelligence.  The ALJ opined that McCoy was overstating his mental deficiencies.  Thus, the ALJ determined, after reviewing the evidence of record, that McCoy's intellectual functioning capacity was a non-severe impairment.

The ALJ's credibility assessment also supports his ultimate conclusion regarding McCoy's mental status.  At page 5 of his report, ALJ Andrus states

> The claimant's statements concerning his impairments and their impact on his ability to work were not credible at all.  The claimant grossly exaggerated his physical limitations.  There are minimal treatment notes and extremely limited clinical findings.  The claimant completed vocational school for auto mechanics.  His testimony was inconsistent as to the reason he lost the jobs, first he said he quit due to pain, then upon questioning by counsel, he said he was filed.  Depending on who asks and when, the claimant was in special education or regular classes.  He can read at the high school level or not.  The claimant's testimony was the most exaggerated I have heard in all my years on the bench.  The record and testimony show that the claimant can fake dumber than he really

is. Statements to MCCC further reveal the inconsistency of the claimant's testimony and other statements in the record. He said he likes to build model cars, get together with friends and ride around. He said he graduated from high school and made average grades.

[Tr., p. 21] With respect to the findings of Dr. Johnson, the ALJ found that he relied too much on the claimant's subjective complaints. Moreover, the ALJ indicated that Dr. Johnson had opined that McCoy seemed to be magnifying his symptoms. Thus, the ALJ rejected the IQ scores obtained by Dr. Johnson and relied on those obtained by Mr. Pack, which he found to be the most reliable indicators of McCoy's intellectual functioning capacity.

##### IV.     CONCLUSION

After reviewing the briefs submitted by the parties and the record before the ALJ, it is clear that the ALJ's opinion was supported by substantial evidence and that cessation of benefits was appropriate inasmuch as McCoy's medical condition improved. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Claimant's Motion for Summary Judgment [Record No. 9] is **DENIED**;

(2)     The Commissioner's Motion for Summary Judgment [Record No. 10] is **GRANTED**; and

(3)     The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 27th day of September, 2005.



Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**

-8-